IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ 𝕏 ____ D.C.

05 JUL 25 PM 4: 07

CLERK, US DISTRICT COURT
W/D OF TN, MEMPHIS

---

WILLIAM JENNINGS,                      X
                                       X
          Plaintiff,                   X
                                       X
vs.                                    X      No. 05-2342-B/V
                                       X
STAR TRUCK & TRAILER SALES,            X
INC., et al.,                          X
                                       X
          Defendants.                  X
                                       X

---

ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS
AND
ORDER TO SHOW CAUSE

---

Plaintiff William Jennings filed a pro se complaint pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., on May 6, 2005, along with an application seeking leave to proceed in forma pauperis. As plaintiff paid the $250 civil filing fee on June 23, 2005, the in forma pauperis motion is DENIED as moot. The Clerk shall record the defendant as Star Truck and Trailer Sales, Inc. ("Star"), Associates Commercial Corporation ("Associates"), CitiCapital Commercial Corporation ("CitiCapital"), Douglas C. Bailey, Robert Green, and Roger Stone.[1] Defendant Bailey is alleged to be the

---

[1]    Although the complaint also purports to sue an unnamed employee of CitiCapital, service of process cannot be made on a fictitious party. Moreover, the filing of a complaint against "John Doe" defendants does not toll the running of the statute of limitation against those parties. See Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Bufalino v. Michigan Bell Telephone Co., 404 F.2d 1023, 1028 (6th Cir. 1968). Thus, to the extent that plaintiff seeks to bring any complaint against any other individual or entity, he must identify the defendant
(continued...)

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 7-26-05



owner of defendant Star. Compl., ¶ 15. Defendant Green is an attorney who represented defendants Star and Bailey in state-court litigation involving the matters at issue here, and defendant Stone represented defendant Associates and CitiCapital in that litigation.

This case arises out of the plaintiff's purchase of an over-the-road truck for his business of pulling trailers loaded with goods in interstate commerce. In May, 2000, plaintiff told defendant Bailey that he was interested in purchasing a 1998 Freightliner from defendant Star. Id., ¶ 15. The parties allegedly agreed on a purchase price of $46,500, and plaintiff paid $8000 down, which he obtained through a mortgage on his home. Id., ¶¶ 18, 31. The remainder of the purchase price was financed by Associates, id., ¶¶ 27-32,[2] which obtained a security interest in the tractor, id., ¶ 45. The sale was consummated on May 18, 2000.

At the time of the sale, defendant Bailey allegedly represented to plaintiff that the tractor was covered by a one hundred thousand (100,000) miles factory warranty, id., ¶ 72, and

---

[1]        (...continued)
and file a new lawsuit within the applicable statute of limitations.

[2]        The complaint alleges that Bailey represented to plaintiff that his credit was not good enough to finance the entire purchase price and, therefore, he would have to pay at least $8000 down. Id., ¶ 16. However, plaintiff sought and obtained approval from defendant Associates for a $47,900 loan for a 1998 Freightliner from Southland Truck Center. Id., ¶¶ 19-20. Plaintiff wanted to purchase the tractor from Star, however, because the sale price of $46,500 was lower than the $47,900 from Southland. Id., ¶¶ 21-23. For reasons that are not clear, plaintiff submitted an application to finance $46,500 from Associates, and he also paid $8000 down. Id., ¶¶ 21, 23-28. Plaintiff contends that, after his $8000 down payment, the total amount financed should have been $38,500, not including the finance charge of $9704.36. Id., ¶ 31. Instead, Star and Bailey allegedly increased the cash sale price to $54,500 by adding the $8000 down payment to the amount financed. Id., ¶ 33, 37-42. For reasons that are not explained, the bill of sale, which was submitted by plaintiff and which bears his signature, clearly reflects a purchase price of $54,500. Id., ¶¶ 43-44 & Ex. D.

they also represented that the truck had its original engine, id.,
73. Defendant Bailey allegedly told plaintiff that the only thing
wrong with the truck was that it needed a rear brake, which Bailey
said he would install. Id., ¶ 75.

One day after purchasing the truck, plaintiff picked up
a load for Day Spring Transport and the fan clutch went out after
one mile. Id., ¶ 78. Bailey replaced the fan clutch at his expense.
Id., ¶ 79. After obtaining the truck from the shop in June, 2000,
plaintiff picked up another load from Day Spring Transport, and his
truck broke down after driving it five miles. Id., ¶ 80. Bailey
refused to repair the truck. Id., ¶ 81. Plaintiff paid $83.44 on or
about June 26, 2000 to have the truck repaired. Id., ¶ 82. The
plaintiff went back to work, and the truck again broke down before
it had left the lot belonging to Day Spring Transport. As a result,
Day Spring fired the plaintiff. Id., ¶ 83.

On or about July 3, 2000, Jennings paid $24.36 to have
his truck repaired. Id., ¶ 86. He then picked up a load from
Southland Transportation, but his truck broke down after two miles
of operation. Id., ¶ 87. Once again, Bailey refused to repair the
truck. Id., ¶ 88. Plaintiff paid $48.16 on or about July 6, 2000 to
repair it. Id., ¶ 89. He picked up another load from Southland
Transportation, but could not complete the delivery because a front
right spring broke on the truck. Id., ¶ 91. On or about July 12,
2000, plaintiff paid $427.59 to repair the truck because Star and
Bailey refused to honor the warranty. Id., ¶ 92. In August of 2000,
Jennings picked up another load from Southland but could not
complete the delivery because his truck broke down again, resulting

3

in his being fired by Southland. Id., ¶ 94. Star and Bailey refused to fix the truck resulting in plaintiff paying $269.00 to make the repairs. Id., ¶¶ 95-96.

After the truck was repaired, Tango Transport contacted the plaintiff on or about September 12, 2000 to start work. Id., ¶ 97. Upon his arrival, Tango informed the plaintiff that his truck would not pass inspection because it had a major oil leak from the engine. Id., ¶ 98. Since his truck could not pass inspection, plaintiff lost his contract with Tango Transport. Id., ¶ 99.

Because plaintiff was on the road when he learned his truck did not pass inspection, he took the truck to Freightliner's manufacturing plant in Shreveport, Louisiana for repairs. Freightliner denied the repairs under the warranty. Id., ¶ 100. Jennings then drove the truck to Freightliner's facility in Memphis, which also denied the repairs under the warranty. Id., ¶ 101. The Freightliner representative explained that the warranty had been voided because the engine in plaintiff's truck was not the original one. Id., ¶ 102. Defendants Star and Bailey still refused to fix the truck. Id., ¶ 103. Plaintiff later learned from Southland Kenworth that the truck had no warranty and it had been in an accident. Id., ¶ 105. Plaintiff asked Star to rescind the contract, but it refused to do so. Id., ¶¶ 106-07. Plaintiff then parked the truck because he could not afford to continue making repairs. Id., ¶ 108.

After his purchase of the truck, plaintiff made his monthly payments of $1501.57 to Associates on June 20, 2000; July 20, 2000; and August 20, 2000. Id., ¶¶ 49, 85, 93. Because the

warranty had been dishonored and Star refused to fix the truck, plaintiff discontinued making payments. <u>Id.</u>, ¶¶ 50, 53.[3]

Plaintiff, through counsel, filed a lawsuit against Star and Bailey in the Shelby County (Tennessee) Circuit Court on or about January 29, 2001 on theories of breach of contract, breach of warranty, fraud, misrepresentation, and violation of the Tennessee Consumer Protection Act, captioned <u>Jennings v. Star Truck & Trailer Sales, et al.</u>, No. CT-000527-01. <u>See</u> Compl., ¶ 113. Once it was served, Associates demanded that plaintiff pay the entire $51,700.25 net balance under the security agreement. <u>Id.</u>, ¶ 114. On or about March, 2001, defendant CitiCapital filed a counterclaim against plaintiff for the sum of $67,570.65, which it contends was the amount due under the security agreement. <u>Id.</u>, ¶ 115. A bench trial commenced on March 8, 2004. <u>Id.</u>, ¶ 116. On May 18, 2004, the state-court judge entered his findings of fact for CitiCapital, which stated in pertinent part as follows:

> 1.   William Jennings (Jennings) and Star Truck and Trailer Sales, Inc. (Star) entered into a Security Agreement (Conditional Sale Contract) for the sale of a 1998 Freightliner on May 18, 2000. . . .
>
> 2.   The Security Agreement was assigned by Star to Associates Capital Corporation n/d/b/a CitiCapital Commercial Corporation (CitiCapital) on May 22, 2000, as set out in the Seller's Agreement. . . .
>
> 3.   Both the Security Agreement . . . and the Bill of Sale . . . were misrepresented by Jennings and Star to

---

[3]     Although the allegations are not clear, it appears plaintiff also contends that Star and Bailey illegally sold the security agreement to CitiCapital on May 22, 2000, thereby making a second profit on the truck. <u>Id.</u>, ¶¶ 57-70, 76-77. According to the findings of fact in the state lawsuit, Associates is now doing business as Citicapital. <u>Id.</u>, Ex. N, at 1 ("The Security Agreement was assigned by Star to Associates Capital Corporation n/d/b/a CitiCapital Commercial Corporation (CitiCapital) on May 22, 2000."). Thus, it appears that Associates and CitiCapital are one and the same.

CitiCapital that a $10,500.00 credit for a trade-in of a 1993 Cadillac Sedan Deville was a portion of the buyer's (Jennings') down payment. The down payment made by the buyer was $8,000.00 rather than $18,500.00 as represented.

4.   Douglas Bailey represented to Plaintiff that there was a $1000,000 mile factory warranty on unit remaining. This was evidenced by the writing on the Bill of Sale, and testified to and by the Plaintiff. After purchase of said truck, the Plaintiff had numerous problems and could not complete any attempted deliveries. In September 2000, Plaintiff learned the truck did not have the promised warranty. Upon learning there was no warranty, Mr. Jennings immediately parked the truck and sought rescission of the contract. He did cease making payments on the truck at that time because the Defendant had materially breached the sales contract by not providing the promised 100,000 mile factory warranty. The Plaintiff testified he was told by Southland Kenworth the truck had no warranty on the engine and he at that time parked the truck. The Plaintiff had purchased said truck expecting a warranty for 100,000 miles. Considering the amount of time actually left on the warranty, the Defendant, Douglas Bailey, misrepresented a material term in the contract.

5.   The recovery and sale of the 1998 Freightliner occurred in a commercially reasonable manner . . . .

6.   After all credits, the balance due CitiCapital as of July 30, 2001 was $21,536.34[.]

7.   The Security Agreement . . . provides the buyer (Jennings) agrees to pay Seller (Star or its assignee, CitiCapital) upon acceleration, interest at 1½ percent per month (18% per annum).

8.   Under Statement of Additional Covenants . . ., Buyer warrants and agrees that the collateral was delivered to and accepted by Buyer in satisfactory condition.

9.   Also, as referenced in Statement of Additional Covenants, Buyer agrees: "after assignment of this agreement by Seller, the assignor will not be the assignee's agent for any purpose and Buyer's obligations and liabilities hereunder to the assignee (CitiCapital) will be absolute and unconditional and will not be subject to any abatement, reduction, recoupment, defense, set-off or counter claim available to buyer for breach of warranty for any reason whatsoever." . . . "The term

'Seller' shall include any assignee of Seller who is the holder of this agreement." . . .

10. Also, in Paragraph B, Buyer agrees: "to pay all expenses incurred by Seller in enforcing its rights after the occurrence of an event of default hereunder, including the reasonable fees of an attorney retained by the Seller (20% of all sums then owing hereunder if permitted by law)."

11. The assignor (Star), in the Seller's Agreement . . . warrants to Assignee (CitiCapital) that the "Buyer has paid the down payment in cash or as otherwise set forth in the Security Agreement and no part thereof was loaned directly or indirectly by Assignor . . . . The documents are and will continue free from defenses, counter claims, cross-claims and set-off. . . ."

12. Assignor in said Seller's Agreement, agrees: "If any of the foregoing warranties are untrue, regardless of Assignee's knowledge thereof or lack of reliance thereon, . . . Assignor hereby unconditionally agrees to . . . purchase the documents on written demand from Assignee for the balance remaining unpaid thereunder, plus any expense of collection, . . . and reasonable attorneys' fees . . . incurred by Assignee . . . ."

Id., Ex. N. According to plaintiff, the state-court judge ordered Star and Bailey to repurchase the security agreement from CitiCapital and pay the total amount due of $39,023.84 and the case would continue between plaintiff, Associates, and Bailey. Id., ¶ 136.

In June, 2004, plaintiff sought to have his attorney removed from the case because the attorney failed to obtain plaintiff's copy of the security agreement, which he had used at the trial but which was not entered into evidence, and which the plaintiff contends differs materially from the copy of the security agreement introduced by CitiCapital. Plaintiff also sought to have his attorney removed because she stipulated to what he contends was an incorrect outstanding balance. Id., ¶ 137. The state-court judge

7

denied the plaintiff's motion on June 25, 2004. <u>Id.</u>, ¶ 138. On

August 4, 2004, defendants asked that plaintiff's complaint be

dismissed because he had misrepresented that part of the

downpayment reflected a $10,500 credit for a trade-in of a 1993

Cadillac Deville. According to Jennings, the state judge dismissed

the complaint without prejudice. The judgment, which was entered on

August 12, 2004, <u>id.</u>, ¶ 140, does not mention that the dismissal

was without prejudice. It states as follows:

> This cause came to be heard upon the Complaint filed
> on behalf of William Jennings against the Defendants,
> Star Truck & Trailer Sales, The Associates and Douglas C.
> Bailey, Individually.   The Answer of Defendants Star
> Truck & Trailer Sales and Douglas C. Bailey, the Answer
> of Associates Commercial Corporation, the Counter-
> Complaint of Associates Commercial Corporation against
> William Jennings, the Cross-Complaint of Associates
> Commercial Corporation against Star Truck & Trailer
> Sales, Inc., the Answer of William Jennings to the
> Counter-Complaint, the Answer of Star Truck & Trailer
> Sales, Inc. to the Cross-Complaint, the Stipulation of
> the parties, the sworn testimony of the parties, William
> Jennings and Douglas C. Bailey, the worn testimony of the
> witnesses, John Tatum and Andy Braddley [sic], the
> statements and arguments of counsel, the Proposed
> Findings of Fact submitted on behalf of all parties and
> upon the entire record in this cause from all of which
> <u>the Court finds that Plaintiff, William Jennings,</u>
> <u>actively participated in the submission of fraudulent</u>
> <u>documents to Associates Capital Corporation and that he</u>
> <u>totally failed to minimize his damages, accordingly the</u>
> <u>Original Complaint should be dismissed</u>.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT
> THE Original Complaint be and the same hereby is
> dismissed and costs are adjudged against the Defendants,
> Star Truck & Trailer Sales.

<u>Id.</u>, Ex. Q (emphasis added). After the complaint was dismissed,

plaintiff's attorneys filed a motion to withdraw, which was

allegedly granted on August 26, 2004. <u>Id.</u>, ¶ 142. Plaintiff filed

a <u>pro</u> <u>se</u> motion for a new trial on September 13, 2004, and

defendant Green filed a response in opposition on behalf of Star
and Bailey on October 8, 2004. Id., ¶ 142. Defendant Green filed a
response for defendants Associates and CitiCapital on October 11,
2004. Id., ¶ 149. The matter came on for a hearing on November 18,
2004, at which time plaintiff requested an extension of time to
obtain the documents from his attorneys so he could prove he did
not actively participate in the submission of fraudulent documents
to CitiCapital. Id., ¶¶ 150-152. The judge denied the plaintiff's
motions, id., ¶¶ 153-55, telling him that "he was going to do him
a favor and deny his motion for a new trial because he did not want
the Plaintiff to get into anymore trouble, id., ¶ 154 (emphasis
omitted). An order to that effect was entered on November 24, 2004.
Id., ¶ 159. Plaintiff's appeal was dismissed due to his failure to
post a bond. Id., ¶ 163 & Ex. W.

The complaint in this action asserts the following claims
for relief: (I) against Bailey pursuant to RICO for falsifying
information on the security agreement pertaining to the down
payment, Compl., ¶ 164; (ii) against Star and Bailey pursuant to
the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §
47-18-101 et seq., and RICO for altering and forging security
agreements and for unlawfully selling the security agreement to
CitiCapital for the purpose of illegally financing the same truck
twice, Compl., ¶¶ 165, 166; (iii) against Star, Bailey, and
Associates under RICO for robbing him of his $8000 down payment by
failing to subtract it from the amount financed, id., ¶¶ 167, 168;
(iv) against Associates, CitiCapital, and Stone pursuant to RICO
for conspiring to bring a counterclaim against plaintiff in order

to collect an unlawful debt of $72,075.36 under a counterfeit security agreement, id., ¶ 169; (v) against Star, Bailey, and Green pursuant to RICO for conspiring with Associates, CitiCapital, and Stone to collect an unlawful debt of $72,075.36 under a counterfeit security agreement, id., ¶ 170; (vi) against Associates and CitiCapital for negligence in failing to protect plaintiff from intentional acts and omissions, which constitutes a violation of the TCPA, fraudulent misrepresentation, breach of contract, and fraud, id., ¶ 171; (vii) against Star and Bailey pursuant to the TCPA for failing to disclose that the truck had been in a wreck and/or was reconstructed, for failing to make repairs under the warranty, for misrepresenting that the engine was original to the truck, and for misrepresenting that the engine and truck were covered by a factory warranty, id., ¶ 172; (viii) against Associates, Star and Bailey for breach of the security agreement, id., ¶ 173; (ix) against Star and Bailey for breach of contract and breach of warranty, id., ¶¶ 174-76; and (x) against Star and Bailey for fraud, id., ¶ 177. Jennings seeks the institution of criminal charges under RICO and under 18 U.S.C. §§ 892 & 894 against the defendants, rescission of the security agreement, and monetary damages.

According to the Sixth Circuit, "a district court may not sua sponte dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint." Apple v. Glenn, 183 F.3d 477, 478 (6th Cir. 1999) (per curiam); see also Benson v. O'Brian, 179 F.3d 1014 (6th Cir. 1999); Tingler v. Marshall, 716 F.2d 1109, 1112 (6th Cir. 1983). There is

an exception to this general rule, however, that permits a district court to dismiss a complaint "for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." Apple, 183 F.3d at 478 (citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)).

Plaintiff's claims against each of the defendants, with the exception of Green and Stone, have already been litigated in the Shelby County Circuit Court action. Moreover, plaintiff's claims against Green and Stone are, in essence, challenges to the outcome of the Circuit Court lawsuit. "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies.'" Montana v. United States, 440 U.S. 147, 153 (1979); see also Allen v. McCurry, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . . Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."); In re Fordu, 201 F.3d 693, 702-03 (6th Cir. 1999) (explaining that the

doctrine of collateral estoppel is now referred to as "issue preclusion").

"Courts apply the doctrine of <u>res judicata</u> to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." <u>Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.</u>, 973 F.2d 474, 480 (6th Cir. 1992). To apply the doctrine of <u>res judicata</u>, or claim preclusion, four elements must be satisfied:

1. A final judgment on the merits in the first action by a court of competent jurisdiction;
2. The second action involves the same parties, or their privies, as the first;
3. The second action raises an issue actually litigated or which should have been litigated in the first action;
4. An identity of the causes of action.

<u>Id.</u>

Although application of the doctrine is complicated by the fact that the complaint filed by the plaintiff in state court is not part of the record, it appears that he sued Star, Bailey, and Associates. The claims against Star and Bailey included breach of contract, breach of warranty, fraud, misrepresentation, and breach of the TCPA. Compl., ¶ 113. It would appear, therefore, that the claims asserted against Star and Bailey in state court largely parallel those brought against those parties in the instant complaint, except that the present complaint also includes RICO claims. Moreover, although the complaint asserts that plaintiff's state-court action against Star and Bailey was dismissed without prejudice, the state-court judgment says nothing of the sort and, instead, appears to adjudicate those claims on the merits. <u>See</u>

supra p. 8. Accordingly, it would appear that, with the exception of the RICO claims, each of the claims plaintiff maintained against Star and Bailey is barred by res judicata.[4] Similarly, although the matter cannot be definitively resolved on the record currently before the Court, it seems likely that, with the exception of the RICO claims, each of the claims plaintiff asserted against Associates is barred by res judicata.

Moreover, the new allegations asserted in the instant action appear to be barred by collateral estoppel or issue preclusion.

> The Sixth Circuit has established a four-part test for determining whether and when collateral estoppel bars relitigation of an issue:
>
> 1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
> 2) determination of the issue must have been necessary to the outcome of the prior proceeding;
> 3) the prior proceeding must have resulted in a final judgment on the merits; and
> 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

---

[4]      Although the plaintiff presumably would contend that the state-court decision was unfair, the Sixth Circuit has, on numerous occasions, rejected similar arguments made by plaintiffs seeking to avoid application of res judicata, reasoning that any argument the plaintiff may have about procedural decisions made in the original lawsuit should have been made in that case, either at the trial court level or on appeal. See, e.g., Quality Measurement Co. v. IPSOS S.A., 56 Fed. Appx. 639, 634 (6th Cir. Jan. 8, 2003) ("RSC is essentially arguing that it should get a new trial simply because the first one was not fair. . . . The purpose of res judicata is to preclude exactly this sort of case; parties cannot relitigate an issue or claim simply because they believe the court or jury reached an incorrect result in the first case. The law provides finality to the parties by insisting they raise complaints about litigation while the case is pending. RSC should have raised the issue of unfairness in the first action, and it may not do so now."); Watts v. Federal Express Corp., 53 Fed. Appx. 333 (6th Cir. Dec. 13, 2002); cert. denied, 540 U.S. 1006 (2003); Rainey Bros. Constr. Co. v. Memphis & Shelby County Bd. of Adjustment, No. 97-5897, 1999 WL 220128 (6th Cir. Apr. 5, 1999) (per curiam); Perry v. Croucher, No. 97-3033, 1998 WL 66151, at *4 (6th Cir. Aug. 31, 1998).

United States v. Cinemark U.S.A., Inc., 348 F.3d 569 (6th Cir. 2003), cert. denied, 124 S. Ct. 2905 (2004). Pursuant to this doctrine, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981) (emphasis added).

These elements appear to have been satisfied as they relate to plaintiff's RICO claims against Star, Bailey, and Associates. The plaintiff's state-court lawsuit involved contentions arising out of the plaintiff's purchase of the tractor from Bailey, the alleged misrepresentations concerning the condition of the tractor and the warranty, the alterations in the security agreement, and the refusal by Star, Bailey and Associates to pay for repairs to the tractor. Plaintiff's claims against Star and Bailey appear to have been dismissed on the merits. Jennings is not entitled to litigate any issue that was resolved in that action, and he also is not permitted to obtain relief on the subject-matter of that complaint by recasting his claims as new legal theories.

Likewise, although it does not appear that the plaintiff asserted any claim against CitiCapital in the Shelby County Circuit Court, the state court found for CitiCapital in its assertions against plaintiff for the amount due under the security agreement. In particular, the state court determined that plaintiff was a party to the misrepresentation in CitiCapital's version of the security agreement that a $10,500 credit for a vehicle trade-in was a portion of the plaintiff's down payment, see supra p. 6; see also

14

supra p. 8 ("the Court finds that Plaintiff, William Jennings, actively participated in the submission of fraudulent documents to Associates Capital Corporation"), and that, "[a]fter all credits, the balance due CitiCapital [under the security agreement] as of July 30, 2001 was $21,536.34," see supra p. 8. Under these circumstances, it appears that plaintiff's claim against CitiCapital and Stone under RICO for conspiring to bring suit on a counterfeit security agreement is barred by collateral estoppel. It also appears that plaintiff's claim against Associates and CitiCapital for failing to protect the plaintiff from misrepresentations is precluded. Finally, by virtue of the state-court's factual findings, plaintiff would appear to be estopped from asserting a RICO claim against Green for conspiring with Associates, CitiCapital, and Stone to collect under the so-called counterfeit security agreement.

Accordingly, the plaintiff is ORDERED, within thirty (30) days of the date of entry of this order, to show cause why this action should not be dismissed for the reasons set forth herein. The plaintiff's response must be typed or hand printed on 8½ by 11 inch paper, one side to a sheet. He must personally sign the response. The response may, at the plaintiff's option, take the form of an amendment to the complaint. A failure timely to respond to this order will result in the dismissal of the complaint in its entirety and without prejudice, pursuant to Fed. R. Civ. P. 41(b), for failure to prosecute.

IT IS SO ORDERED this ___23___ day of July, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 4 in case 2:05-CV-02342 was distributed by fax, mail, or direct printing on July 26, 2005 to the parties listed.

---

William Jennings
4378 Windward St.
Memphis, TN 38109

Honorable J. Breen
US DISTRICT COURT